Filed 9/19/13  P. v. Salazar-Zavala CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOTMAN SALAZAR-ZAVALA,<br><br>        Defendant and Appellant. | A136485<br><br>(Sonoma County<br>Super. Ct. No. SCR602224) |

A jury convicted defendant Jotman Salazar-Zavala of rape upon evidence that defendant had unlawful sexual intercourse with an unconscious woman during a drinking party. (Pen. Code, § 261, subd. (a)(4).) The court sentenced defendant to three years in prison. Defendant contends the trial court erred in denying defense counsel's request to excuse a prospective juror for cause and thereby forcing defendant, who had exhausted his peremptory challenges, to accept a biased juror. Finding no error, we shall affirm the judgment.

**Statement of Facts**

Defendant's sole argument on appeal concerns the trial court's decision not to dismiss a prospective juror for cause. The statement of facts is, therefore, limited to the jury selection process.

The prospective jurors were informed at the outset of voir dire that the case concerned unlawful sexual intercourse with an unconscious person. Late in the process, Juror No. 1402 and other prospective jurors were called into the jury box after others had been excused. Defendant had exhausted all 10 of his peremptory challenges by that time.

1

Juror No. 1402 stated that he was a married man who worked as a concrete truck driver and had served on a civil jury 15 or 20 years previously. He said he knew individuals in the sheriff's department, including a court bailiff.

The court asked the newly seated prospective jurors "if anyone has feelings in this type of case one way or another that would make it difficult or impossible for you to sit and be fair [and] impartial in the case." Juror No. 1402 raised his hand and the following exchange occurred: "The Court: Tell me your thoughts. [¶] Prospective Juror: I just had a family member sexually harassed, not abused. I don't know if that would have anything to do with this case or not, but — [¶] The Court: Well, we'll find out. Now, you say you have a family member sexually harassed? [¶] Prospective Juror: Harassed, that's correct. [¶] The Court: Okay. Something in the recent past? [¶] Prospective Juror: No, your Honor. [¶] The Court: How long ago? [¶] Prospective Juror: Probably 17 years ago. [¶] The Court: Okay. And when you say 'sexually harassed,' what do you mean? [¶] Prospective Juror: By her coworkers attempting to go down her shirt, upper shirt. [¶] The Court: Okay. Who was this person? [¶] Prospective Juror: My wife. [¶] The Court: I see. And so it was an employment setting? [¶] Prospective Juror: Yes, sir. [¶] The Court: I see. And in that regard some of her coworkers were sexually harassing your wife? [¶] Prospective Juror: And others, yes. [¶] The Court: Okay. Now, I'm wondering with that backdrop, were you involved in the case? Was there a case to be involved in? [¶] Prospective Juror: Was I involved? [¶] The Court: Yes. [¶] Prospective Juror: No. It's probably a good thing I wasn't. [¶] The Court: I wonder if you had a statement or something like that? [¶] Prospective Juror: No. [¶] The Court: Okay. Do you know if the individuals involved were arrested? [¶] Prospective Juror: No. The reason they weren't is because . . . she went to court and got papers and hired an attorney, and then she was afraid she'd lose her job. [¶] The Court: Was a lawsuit actually filed? [¶] Prospective Juror: No. [¶] The Court: I see. Well, now, keeping in mind that situation, this is not an employment situation. Can you set that aside in this case and listen to the evidence in this case and make a decision solely on the evidence produced solely in this

2

courtroom? Do you think you can do that? [¶] Prospective Juror: I will give it my best shot, yes. [¶] The Court: I appreciate that."

The prosecutor asked Juror No. 1402 if his relationship with law enforcement officers put defendant at a disadvantage and the juror said "no." The prosecutor asked "So . . . you can be fair and impartial towards the defendant at this point?" and defendant said "yes."

Defense counsel then questioned Juror No. 1402. "[Defense counsel]: . . . Good afternoon once again. Juror No. 1402. [¶] Prospective Juror: I'm popular today. [¶] [Defense counsel]: You know what, I got some real concerns. [¶] Prospective Juror: Okay. [¶] [Defense counsel]: And, you know, let me ask you this. If you were sitting here and had the unfortunate events, have you sitting here where my client is, right? [¶] Prospective Juror: Right. [¶] [Defense counsel]: Why would I want you as — on my jury — as a juror on my case? [¶] Prospective Juror: You probably wouldn't. [¶] [Defense counsel]: Why is that? [¶] Prospective Juror: Well, if he's the kind of guy I said earlier, it wouldn't work. I would automatically call it guilty. [¶] [Defense counsel]: And that's the way you feel right now? [¶] Prospective Juror: No, no. I didn't say that. If I said that, that's what I was thinking then, yes. [¶] [Defense counsel]: Okay. Didn't you earlier say that you didn't feel like you could sit on this jury, that you would not — [¶] Prospective Juror: Well, I guess. I guess I could. I did say that, yes. [¶] [Defense counsel]: Why did you say that? [¶] Prospective Juror: Well, because it's [bringing] me to the thought of what happened years ago with my wife. [¶] [Defense counsel]: Okay. And you know what, I don't mean to raise your blood pressure. [¶] Prospective Juror: That's good. I take pills for it. [¶] [Defense counsel]: I'm just trying to get information from you with regards to the Deputy DA has brought it up, the judge has brought it up. Just trying to find a fair and impartial jury, trying to remove any bias that we may have in this case because, you know, I think we all agree that everybody has got some bias in some way, manner or shape. But with your background, looking at my client right now, is it your impression that he must have done something, he's sitting here. [¶] Prospective Juror: I agree with that, yes. [¶] [Defense counsel]: You agree with that. And so, you know that

3

the law says that he is presumed innocent even while sitting at defense table? Do you understand that? [¶] Prospective Juror: I understand that. [¶] [Defense counsel]: Do you know what that means? [¶] Prospective Juror: He's not guilty yet. [¶] [Defense counsel]: When you say 'not guilty yet,' it kind of — it raises a red flag to me too. So are you saying that it's your belief that, you know, he's not innocent at this point. He is guilty. You just want to hear the evidence that's going to convict him? Is that fair? [¶] Prospective Juror: But I'm not saying he's guilty, no. Like, I'd like to hear the evidence, yes. [¶] [Defense counsel]: Would you like to sit on this panel and hear this case? [¶] Prospective Juror: If it paid better. [¶] [Defense counsel]: Do you believe that it's going to be difficult for you . . . to hear this case? [¶] Prospective Juror: It could be. [¶] [Defense counsel]: Okay. It could be. And what do you mean by 'It could be'? [¶] Prospective Juror: Like anything else, I guess. [¶] [Defense counsel]: Do you believe that by listening to this case you may get flashbacks as to what your wife went through in her harassment case? [¶] Prospective Juror: That's what I brought up earlier, yes. That's why I said what I said. [¶] [Defense counsel]: Okay. And — [¶] Prospective Juror: I said it could possibly, yes. [¶] [Defense counsel]: And you bring that up because you want us to know that you may not be able to be impartial during the course of this case? [¶] Prospective Juror: Correct. [¶] [Defense counsel]: You just don't know that yet? [¶] Prospective Juror: That's right."

The court asked Juror No. 1402: "[W]ith all of the questions that I've asked of you and those of counsel, I'm wondering if you would make a commitment to us if you're going to keep an open mind throughout this case as you look through the evidence produced in the courtroom, make a decision based solely on the evidence presented here in the courtroom. Can you do that?" The juror replied, "Yes, sir."

Defense counsel asked to remove Juror No. 1402 for cause. Counsel said the prospective juror "kept flip/flopping" and "doesn't know in the end whether he can keep an open mind." The prosecutor opposed the request, saying she believed the juror "could be fair and impartial." The court denied the challenge for cause. The court stated: "It appears to me that as with all individuals who grapple with the idea of having other

4

things occur in their life, and he seems to have made a commitment to counsel and the court that he will keep an open mind and make a decision in this case based solely on the evidence." Just before the jury was sworn, defense counsel renewed his objection to the jury as constituted, saying he believed Juror No. 1402 was biased.

## Discussion

Defendant contends the trial court erred in denying his challenge for cause to a prospective juror. The contention is preserved for appeal because defendant objected to the prospective juror during voir dire, had no remaining peremptory challenges to remove the juror in question, and objected to the jury ultimately selected. (*People v. Souza* (2012) 54 Cal.4th 90, 130.)

The law permits a prospective juror to be challenged for cause on limited grounds. Among those grounds is actual bias, defined as "the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party." (Code of Civ. Proc., § 225, subd. (b)(1)(C).)

" 'In general, the qualification of jurors challenged for cause are "matters within the wide discretion of the trial court, seldom disturbed on appeal.' " (*People v. Thomas* (2011) 51 Cal.4th 449, 470.) "Jurors commonly supply conflicting or equivocal responses to questions directed at their potential bias or incapacity to serve. When such conflicting or equivocal answers are given, the trial court, through its observation of the juror's demeanor as well as through its evaluation of the juror's verbal responses, is best suited to reach a conclusion regarding the juror's actual state of mind." (*People v. Martinez* (2009) 47 Cal.4th 399, 426.) " '[A] trial judge who observes and speaks with a prospective juror and hears that person's responses (noting, among other things, the person's tone of voice, apparent level of confidence, and demeanor) gleans valuable information that simply does not appear on the record.' " (*Ibid.*) Accordingly, "[t]he trial court's resolution of conflicts on the question of juror bias is binding on the reviewing court if supported by substantial evidence." (*Id.* at p. 427.)

Substantial evidence supports the trial court's finding that the workplace sexual harassment of Juror No. 1402's wife over a decade previously would not impair his ability to be a fair and impartial juror in defendant's rape trial. Initially, the juror raised his hand when the court asked the panel if anyone had feelings that may make impartiality difficult. When asked if he could put aside his wife's experience and "make a decision based solely on the evidence," said "I will give it my best shot, yes." Defendant argues that the juror's reply is less than an unqualified statement of impartiality but the juror had an informal way of talking. The trial court understood the reply as a commitment to fairness, stating appreciation for the juror's reply. Moreover, the juror later made "a commitment" to keep an open mind and to "make a decision based solely on the evidence" presented in court. While the juror told defense counsel that defendant's presence in court gave the impression that defendant "must have done something," the juror immediately clarified that he was not saying defendant was guilty and would "like to hear the evidence." As noted above, "[j]urors commonly supply conflicting or equivocal responses to questions directed at their potential bias or incapacity to serve." (*People v. Martinez, supra,* 47 Cal.4th at p. 426.) The trial court is in the best position to weigh a juror's responses and "to reach a conclusion regarding the juror's actual state of mind." (*Ibid.*) We find no basis to overturn the trial court's conclusion in this case that Juror No. 1402 could serve with impartiality.

**Disposition**

The judgment is affirmed.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.